UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

CALLIE MAIDHOF, et al.,

          Plaintiffs,

   v.

MITCHELL CELAYA, HARRY
LEGRANDE, MARC DECOULODE, and
ROBERT J. BIRGENEAU,

          Defendants.

Case No.: C 11-4971 LB

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION TO DISMISS**

## I.      INTRODUCTION

In this putative class action, named plaintiffs, Callie Maidhof, Zachary Solomon Miller, Brian Glasscock, Laura Zelko, Joshua Clover, and Luzilda Carrillo—on behalf of themselves and 60 other individuals (collectively, "Plaintiffs")—assert Fourth and First Amendment civil rights claims arising from their arrest and detention following a 2009 protest on the University of California, Berkeley ("University") campus. Am. Compl. ("Complaint"), ECF No. 14.[1] In their first claim, Plaintiffs allege that the University of California, Berkeley Police Department ("UCBPD"), acting on the orders of University officials, arrested them without probable cause, wrongfully detained them on campus for several hours, and sent them to Alameda County Jail for

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page number at the top of the document, not the pages at the bottom.

Case No. 11-CV-4971 LB
ORDER

*United States District Court
Northern District of California*

processing in violation of the Fourth Amendment.  In their second claim, Plaintiffs allege that the University and UCBPD normally cite and release nonviolent misdemeanants, but here sent Plaintiffs to jail in retaliation for their exercise of their First Amendment rights.  *See Id.* at 10, ¶¶ 48-49.  Plaintiffs seek relief from three defendants:[2]

- UCBPD Chief Mitchell Celaya ("Celaya");
- University Vice Chancellor for Student Affairs, Harry LeGrande ("LeGrande"); and
- University Chancellor Robert J. Birgeneau ("Birgeneau").

*Id.* at 4-5, ¶¶ 15-18.  Plaintiffs seek damages against the individual defendants and injunctive relief against all defendants.  *Id.* at 2, ¶¶ 1-2.  Defendants jointly move to dismiss Plaintiffs' second claim for relief, which alleges that Celaya and LeGrande, in their personal capacities, and all three remaining defendants in their official capacities, violated Plaintiffs' rights under the First Amendment.

     After considering the case history, the parties' papers, and law, the court determines that this matter is appropriate for resolution without oral argument.  N.D. Cal. L.R. 7-1(b).  The court now DENIES in part and GRANTS in part Defendants' motion to dismiss Plaintiffs' First Amended Complaint.

## II.   FACTS

     Plaintiffs seek to represent a class of present and former University students and community members[3] who set up an informational session they called the Open University in Wheeler Hall on the University campus.  *Id.* at 2, ¶ 3.  The purpose of the Open University was to protest University budget cuts, tuition increases, and the "skewed priorities" of the University of California system.  *Id.* at 6, ¶ 27.  Plaintiffs intended for the Open University to operate 24 hours a day from December 7 to December 12, 2009.  *Id.* at 2, ¶ 3, 6, ¶ 25.  University officials, including

---

[2] On February 28th, 2012, Plaintiffs dismissed all claims against Mark Decoulode.  Notice of Dismissal, ECF No. 21.

[3] The Complaint refers to all Plaintiffs as "students" while acknowledging that some Plaintiffs were not students.  *Compare* Compl., ECF No. 14 at 2, ¶ 3, *with* 10, ¶ 48.  For ease of reference, the court will follow Plaintiffs' usage.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Celaya and LeGrande, had advance notice of the planned Open University protest and decided not

2   to prevent it from going forward. *Id.* at 7, ¶ 28.

3          On December 7, 2009, the protestors entered Wheeler Hall and began their protest. *Id.* at

4   7, ¶ 31.  When the building closed, the protestors refused to comply with a UCBPD order to leave

5   the premises. *Id.* at 7, ¶¶ 32-33.  Eventually, the students, UCBPD, and Defendants agreed to an

6   arrangement whereby the protestors could remain in Wheeler Hall for the night. *Id.* at 7, ¶ 33.

7          The next day, University officials, including Celaya and LeGrande, held a meeting to

8   discuss the protests. *Id.* at 8, ¶ 25.  They agreed to permit the protest to continue until the

9   morning of Saturday, December 11.  *Id.*  UCBPD relayed this information to the protestors,

10  telling them they would be given "informal sanction" to continue the Open University until

11  Saturday morning. *Id.* at 8, ¶ 36.  UCBPD officers were present in Wheeler Hall throughout the

12  protest and permitted the protestors to enter and leave Wheeler Hall unhindered. *Id.* at 8, ¶¶ 34-

13  39, 9, ¶ 44.

14         On Thursday, December 10, University officials learned that the protestors planned to

15  stage a concert to celebrate the end of the Open University. *Id.* at 8, ¶ 40.  University officials

16  and student representatives met to discuss the planned concert.  *Id.*  During another private

17  meeting, however, University officials, including LeGrande and Celaya decided to have all of the

18  protestors arrested, though they never communicated this decision to the students. *Id.* at 9,

19  ¶¶ 41, 43.

20         Early in the morning on Friday, December 11, 2009, UCBPD officers acting on the orders

21  of Celaya and LeGrande sealed off the doors to Wheeler Hall and began arresting the students as

22  they slept. *Id.* at 9, ¶ 46.  In total, the UCBPD arrested 66 students, who were then detained in the

23  basement of Wheeler Hall, processed, and interrogated for several hours. *Id.* at 10, ¶ 48.  The

24  arrested students were then transferred to Alameda County Jail.  *Id.*

25         The UCBPD generally cites and releases people who have committed non-violent

26  misdemeanors. *Id.* at 10, ¶ 49.  According to Plaintiffs, however, the UCBPD has a policy of

27  jailing protestors exercising their First Amendment rights in order to punish them and discourage

28  future protests. *Id.* at 10, ¶¶ 49, 51.  In this instance, the decision to send the protestors to

1   Alameda County Jail, rather than citing and releasing them, was made by Celaya and LeGrande,

2   allegedly with Birgeneau's agreement.  *Id.* at 10, ¶ 50.  In fact, Celaya indicated that jailing the

3   arrested students was beneficial because it prevented them from joining the protests that arose in

4   response to their arrest.  *Id.* at 10, ¶ 52.

### III.    LEGAL STANDARDS

#### A.  <u>Motion to Dismiss</u>

7       A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it

8   does not contain enough facts to state a claim for relief that is plausible on its face.  *See Bell*

9   *Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the

10  plaintiff pleads factual content that allows the court to draw the reasonable inference that the

11  defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

12  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

13  sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 557).

14  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

15  allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]' to relief requires

16  more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

17  will not do.  Factual allegations must be enough to raise a right to relief above the speculative

18  level."  *Twombly*, 500 U.S. at 555 (internal citations and parentheticals omitted).  "In sum, for a

19  complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable

20  inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to

21  relief."  *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation

22  omitted).

23      In considering a motion to dismiss, a court must accept as true all well-pleaded factual

24  allegations and construe them in the light most favorable to the plaintiff.  *See Bell Atlantic Corp.*

25  *v. Twombly*, 550 U.S. 544, 550 (2007); *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v.*

26  *Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007).

27      If the court dismisses the complaint, it should grant leave to amend even if no request to

28  amend is made "unless it determines that the pleading could not possibly be cured by the

Case No. 11-CV-4971 LB
ORDER                            4

allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).

### B.   42 U.S.C. § 1983

Plaintiffs' claims arise under 42 U.S.C. § 1983.  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).  Further, in order to establish individual liability under 42 U.S.C. § 1983, "a plaintiff must plead that each Government-official defendant, through the official's own actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

### IV.   DISCUSSION

Defendants move for dismissal on the grounds that the factual allegations in the Complaint are insufficient to plausibly establish Plaintiffs' entitlement to relief against any Defendants, whether in their individual or official capacities.  Mem. of P. & A., ECF No. 18 at 6.  The court will analyze Plaintiffs' individual and official capacity claims in turn.

### A.   Plaintiffs' Individual Capacity Claims

Plaintiffs seek damages from UCBPD Chief Celaya and University Vice Chancellor for Student Affairs LeGrande in their individual capacities for allegedly retaliating against them in violation of the First Amendment.  Compl., ECF No. 14 at 10, ¶¶ 50-51, 12, ¶ 59.  In order to prevail on this claim, Protestors must eventually show that: (1) Defendants took action "that would chill or silence a person of ordinary firmness from future First Amendment activities" and (2) that the "desire to cause the chilling effect was a but-for cause of the defendants' action." *Skoog v. County of Clackamas*, 469 F.3d 1221, 1232 (9th Cir. 2006).

Defendants' motion to dismiss Plaintiffs' individual capacity claims is solely directed to the sufficiency of the allegations under the second *Skoog* element, which requires a showing of retaliatory intent.  Reply, ECF No. 20 at 1-2.  Defendants argue that the Complaint fails to allege retaliatory intent because Plaintiffs' allegations are based on conclusory assertions rather than factual content.  Mem. of P. & A., ECF No. 18 at 11.  Thus, the main inquiry before the court is

1    whether Plaintiffs have sufficiently alleged that Celaya and LeGrande had them arrested and sent

2    to Alameda County Jail in order to punish them "for engaging in free speech or to discourage

3    others from engaging in free speech in the future."  Compl., ECF No. 14 at 5, ¶ 21.

4        As an initial step, Plaintiffs sufficiently allege that it was Celaya and LeGrande, at least in

5    part, who had them arrested and sent to Alameda County Jail.  Plaintiffs specifically allege that

6    Celaya and LeGrande, with Birgeneau's agreement, decided to send Plaintiffs to Alameda County

7    Jail instead of citing and releasing them.  Compl., ECF No. 14 at 10, ¶ 50.  The court does not

8    assume the truth of this conclusory allegation, however, based on the Supreme Court's analysis in

9    *Iqbal*.  There, Iqbal alleged that former Attorney General Ashcroft was the "principal architect" of

10   the allegedly unlawful policy and that former FBI Director Mueller "was 'instrumental' in

11   adopting and executing it."  *Iqbal*, 556 U.S. at 680-81.  The Supreme Court found that these

12   allegations were "nothing more than a formulaic recitation of the elements of a constitutional

13   discrimination claim…."  *Id.* at 681.  For the same reasons, the court does not assume the truth of

14   the allegations in paragraph 50 of Plaintiffs' Complaint.  Rather, Plaintiffs must support these

15   conclusions with other factual allegations.

16       Plaintiffs' other factual allegations, however, are sufficient.  First, in their roles as Chief of

17   the UCBPD and University Vice Chancellor for Student Affairs, Celaya and LeGrande were

18   likely to be involved in decisions regarding protests on campus.  Compl., ECF No. 14 at 4, ¶¶ 15-

19   16.  Second, Plaintiffs allege that they obtained documents indicating that Celaya and LeGrande

20   had advance knowledge of Plaintiffs' plans and attended meetings where it was decided to let the

21   protest proceed.  *Id.* at 6-8, ¶¶ 28, 35.  Third, Plaintiffs claim to have obtained documents

22   showing that Celaya and LeGrande, in conjunction with other University officials, decided to

23   have Plaintiffs arrested after learning that they planned to stage a concert.  *Id.* at 8-9, ¶¶ 40-41.

24   These allegations provide sufficient factual support for the otherwise conclusory allegation that

25   Celaya and LeGrande ordered the University police to arrest Plaintiffs.  *See Id.* at 9, ¶ 42.  It is

26   reasonable to infer from the same facts that Celaya and LeGrande may have decided to process

27   Plaintiffs at Alameda County Jail, rather than citing and releasing them.  Thus, the final question

28

Case No. 11-CV-4971 LB
ORDER                              6

United States District Court
Northern District of California

United States District Court
Northern District of California

1   is whether Plaintiffs have plausibly alleged that Celaya and LeGrande were each acting out of

2   retaliatory intent in sending them to the county jail.

3          Defendants argue that Plaintiffs' retaliatory intent allegations are conclusory.  *See, e.g.*,

4   Mem. of P. & A., ECF No. 18 at 10.  For example, the Complaint states that "the decision to send

5   the Plaintiffs to jail was made in order to punish students for exercising their First Amendment

6   rights and to dissuade people from protesting at UC Berkeley in the future."  ECF No. 14 at 10, ¶

7   51.  As Defendants point out, in *Moss*, the Ninth Circuit found analogous allegations of

8   impermissible motive to be conclusory and not entitled to an assumption of truth without further

9   factual support.  Reply, ECF No. 20 at 8 (citing *Moss*, 572 F.3d at 970).  Here, the court agrees

10  that the allegation in paragraph 51 of the complaint is conclusory.

11         Nonetheless, Plaintiffs have alleged other facts that sufficiently support their general

12  allegations of retaliatory intent.  For example, in paragraph 49 of the First Amended Complaint,

13  Plaintiffs make two allegations: (1) that UCBPD generally cites and releases nonviolent

14  misdemeanants, and (2) that arresting, rather than citing and releasing, nonviolent misdemeanants

15  is a violation of California law.  Defendants argue that the first allegation is vague and the second

16  allegation is legally incorrect.[4]  Mem. of P. & A., ECF No. 18 at 11.  Although somewhat general,

17  Plaintiffs' allegation regarding UCBPD's practice of citing and releasing nonviolent

18  misdemeanants is a statement of fact entitled to the presumption of truth.  The statement is further

19  supported by allegations that many Plaintiffs are University students, who are likely to have

20  knowledge of such practices.  *See* Compl., ECF No. 14 at 3-4 ¶¶ 9-14.  The court, however, does

21  not assume the truth of Plaintiffs' legal conclusion that UCBPD is required to cite and release

22  nonviolent misdemeanants.  Still, in combination with the other factual allegations, Plaintiffs have

23  plausibly alleged that their alleged mistreatment was retaliatory because they were detained and

24

25

26         [4] The parties spend much of their briefing disputing whether Defendants' alleged actions
    constitute violations of California Penal Code § 853.6.  *See, e.g.*, Mem. of P. & A., ECF No. 18 at
27  11-12; Opp'n, ECF No. 19 at 10-11; Reply, ECF No. 20 at 4-5.  While Defendants' statutory
    analysis is compelling, the court's ultimate ruling is not predicated on finding retaliatory intent
28  through any such statutory violation.

United States District Court
Northern District of California

1   processed differently from other misdemeanants who were not arrested while exercising their

2   First Amendment rights.

3          Finally, Plaintiffs must allege that each individual defendant acted with the requisite

4   retaliatory intent and was a but-for cause of the constitutional rights violations at issue.  *Leer v.*

5   *Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); Mem. of P. & A., ECF No. 18 at 17; Reply, ECF No.

6   20 at 9.  Plaintiffs easily satisfy this burden with regard to UCBPD Chief Celaya.  According to

7   the Complaint, Celaya indicated that the benefit of sending the students to the county jail was that

8   they would not be available to join the protests that arose in response to their arrests.  *Id.* at

9   10, ¶ 52.  Defendants argue that this "post-arrest comment"[5] fails to establish retaliatory intent

10  because it "says nothing about the pre-arrest decision to transport the arrestees to [Alameda

11  County Jail] for booking…."  Mem. of P. & A., ECF No. 18 at 18.  Given the liberal pleading

12  standards of Rule 8, the court finds that this statement is sufficient to plausibly allege retaliatory

13  intent at this stage of the proceedings.

14         Plaintiffs also sufficiently allege that Vice Chancellor LeGrande acted with retaliatory

15  intent for the purpose of chilling free speech.  As discussed, the Complaint makes specific factual

16  allegations supporting the inference that LeGrande decided to have Plaintiffs arrested and

17  processed at Alameda County Jail.  This represents an abrupt change from the University's

18  previously tolerant attitude toward Plaintiffs.  One plausible explanation for this change is that

19  LeGrande decided to punish Plaintiffs in the hope of chilling further First Amendment activities.

20  Plaintiffs allege that these acts were done with the motive to retaliate against them and were the

21  proximate cause of injury and damages.  Compl., ECF No. 14 at 12, ¶ 60.  At this early stage of

22  the pleadings, the court finds that the factual allegations plausibly suggest that LeGrande may

23  have been motivated by retaliatory intent.

24         As discussed, Plaintiffs' well-pleaded factual allegations plausibly support their claims for

25  retaliatory conduct in violation of the First Amendment.  Accordingly, Defendants' Motion to

26

27  _____

28      [5] The Complaint does not actually indicate when Celaya made the alleged statement,
    though Plaintiffs implicitly concede that it was made after Plaintiffs were transported to the
    county jail.  *See* Opp'n, ECF No. 19 at 13.

Dismiss is DENIED as to Defendants Mitchell Celaya and Harry Legrande, in their individual capacities.

**B.** **Plaintiffs' Official Capacity Claims**

Plaintiffs' official capacity claims seek to enjoin Celaya, LeGrande, and Birgeneau from transporting nonviolent protestors to jail for processing instead of citing and releasing them. Compl., ECF No. 14 at 12, ¶ 59. Official capacity suits are "another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978) (quotation marks omitted)). Because a suit against an official in his or her official capacity is a suit against the state, a practice, policy, or procedure of the state must be at issue in a claim for official capacity injunctive relief. *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

In order to survive a motion to dismiss, the plaintiff must allege a specific policy, custom, or habit that led to the constitutional deprivation at issue. *See Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012). Plaintiffs claim that Defendants are University "policy makers responsible for establishing final policy with respect to the subject matter in question." Opp'n, ECF No. 19 at 12 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (quotation marks omitted)). By alleging that Defendants caused the constitutional violations at issue, Plaintiffs claim they have sufficiently alleged University policy for *Monell* purposes. In their Reply, Defendants do not challenge Plaintiffs' assertion that they are policy makers. Instead, Defendants concede that Plaintiffs have sufficiently alleged the threshold requirements for their official capacity claims. *See* Reply, ECF No. 20, at n. 2.

As previously discussed, Plaintiffs have stated plausible First Amendment claims against Celaya and LeGrande. Because Plaintiffs sufficiently allege *Monell* liability, Defendants' Motion to Dismiss Plaintiffs' First Amendment claims against Celaya and LeGrande in their official capacities is DENIED.

Plaintiffs' second claim for relief fails as to Chancellor Birgeneau, however. Unlike the allegations against Celaya and LeGrande, the allegations against Birgeneau are entirely conclusory. *See* Compl., ECF No. 14 at 10, ¶ 50 (stating, without factual support, that Birgeneau

United States District Court
Northern District of California

1    agreed with the decision to send Plaintiffs to Alameda County Jail).  Plaintiffs provide no factual

2    content to support these allegations.  Accordingly, Defendants' Motion to Dismiss Plaintiffs' First

3    Amendment claim against Chancellor Birgeneau in his official capacity is GRANTED.  Since

4    leave to amend shall be freely given, however, the court grants Defendants' Motion to Dismiss

5    with leave to amend.  *See* Fed. R. Civ. P. 15(a).

6    **C.   Defendants' "Alternative Explanations" Argument**

7         Defendants suggest an additional rationale for dismissing Plaintiffs' First Amendment

8    claims.  They argue there are "obvious alternative explanations" for the facts alleged and that an

9    "obvious alternative explanation" mandates dismissal.  *See* Mem. of P. & A., ECF No. 18 at 14;

10   Reply, ECF No. 20 at 5.  Specifically, Defendants speculate that UCBPD might have transferred

11   Plaintiffs to Alameda County Jail because they had difficulty processing so many arrestees at the

12   same time.  Mem. of P. & A., ECF No. 18 at 14.  According to Defendants, "where there is a

13   choice between an 'obvious alternative explanation' for the challenged conduct on the one hand,

14   and the purposeful, invidious retaliation alleged by Plaintiffs on the other, retaliation is not a

15   plausible conclusion."  Reply, ECF No. 20 at 5 (quoting *Iqbal*, 556 U.S. at 682).  Plaintiffs

16   respond by attacking Defendants' alternative explanation.  *See* Opp'n, ECF No. 19 at 10.

17        Defendants' argument fails because it is based on a misinterpretation of the pleading

18   standard.  Contrary to Defendants' assertions, *Iqbal* did not hold that <u>any</u> obvious alternative

19   explanation was sufficient to defeat a complaint.  Rather, the Court examined the extraordinarily

20   persuasive alternative explanation before it and "concluded that this alternative explanation was

21   so likely to be true that, as between the two explanations, Iqbal's explanation was not plausible."

22   *Starr v. Baca*, 652 F.3d 1202, 1214 (9th Cir. 2011).  In contrast, Defendants' interpretation of the

23   facts alleged does not render Plaintiffs' explanation implausible.  Where, as here, "there are two

24   alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of

25   which are plausible, plaintiff's complaint survives a motion to dismiss under rule 12(b)(6)." *Id.* at

26   1216.

27   ///

28   ///

Case No. 11-CV-4971 LB
ORDER                           10

## V.   CONCLUSION

For the foregoing reasons, the court DENIES Defendants' Motion to Dismiss Plaintiffs' claims against Celaya and LeGrande in their individual and official capacities, and GRANTS Defendants' Motion to Dismiss against Birgeneau with leave to amend.  Plaintiffs have twenty-one days to file an amended complaint.

Dated: April 25, 2012

_____
LAUREL BEELER
United States Magistrate Judge

United States District Court
Northern District of California

Case No. 11-CV-4971 LB
ORDER                                        11